UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOMNER OROZCO CARRETO, and CARLOS RAMIREZ, | )<br>)<br>)  No. 21 cv 735<br>) |
| Plaintiffs, | )  John J. Tharp, Jr.<br>)  District Judge |
| v. | )<br>)  Jeffrey T. Gilbert, |
| Chicago Police Officers KEVIN BUNGE, Star #12973, JOHN DOES #1 and 2, and CITY OF CHICAGO, | )  Magistrate Judge<br>)<br>)<br>) |
| Defendants. | ) |

**PLAINTIFFS' RESPONSE TO DEFENDANT CITY
OF CHICAGO'S PARTIAL MOTION TO DISMISS
PLAINTIFFS' MONELL CLAIM**

Plaintiffs, by and through their attorneys Brad Thomson and Jan Susler, People's Law Office, file this response in opposition to Defendant City of Chicago's Partial Motion to Dismiss Plaintiffs' First Amended Complaint. Plaintiffs simultaneously file a Motion to Strike Exhibits Attached to Defendant City of Chicago's Partial Motion to Dismiss, and for Other Relief, to be considered as part of this response opposing Defendant City's Partial Motion to Dismiss.

**INTRODUCTION AND FACTUAL BACKGROUND**

On December 11, 2020, Defendant Chicago police officer Kevin Bunge fired his weapon, without cause or justification, into a parked vehicle occupied by Plaintiffs Jomner Orozco Carreto and Carlos Ramirez, who were both unarmed,

1

striking and wounding Plaintiff Orozco Carreto's hand. On February 9, 2021, Plaintiffs commenced this federal civil rights lawsuit against Defendant Bunge, filing a complaint alleging excessive force and numerous state law violations. Dkt. 1. On April 16, 2021, Plaintiffs filed a First Amended Complaint (FAC) against Defendant Bunge, Defendant Chicago police officers John Does, and Defendant City of Chicago. Dkt. 24. The FAC included a count against Defendant City of Chicago pursuant to *Monell* [Dkt. 24, ¶¶ 36-51] alleging that Defendant City maintains interrelated *de facto* policies, practices, and customs, including:

      a)    the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers who commit acts of excessive force, including unjustified shootings;

      b)    the police code of silence;

      c)    the encouragement of excessive and unreasonable force;

      d)    the failure to properly investigate shootings of civilians by Chicago police officers;

      e)    the failure to properly discipline, monitor, counsel and otherwise control Chicago police officers who engage in unjustified shootings;

      f) the failure to properly identify, screen, monitor, and treat Chicago police officers who suffer from mental health or psychological issues that could increase the likelihood that they will engage in unjustified shootings;

      g) the failure to implement an effective "early warning system" or early intervention program that would identify and address officers at risk of engaging in unjustified shootings;

      h) the failure to properly train and supervise Chicago police officers with regard to de-escalation tactics and strategies; and/or

      i) the failure to properly train and supervise Chicago police officers in de-escalation techniques and policies. Dkt. 24, ¶ 38.

The FAC provides a factual basis that is more than sufficient to support the existence of the policies, practices, and customs listed above. Plaintiffs cite to a report by the Civil Rights Division of the United States Department of Justice Department ("DOJ Report"), a report by the Police Accountability Task Force ("PATF"), admissions by City officials, a judicial opinion from this district, and a finding by a jury in this district. ¶¶ 39-40, 43-48. Plaintiffs specifically alleged in the FAC that these policies, practices, and customs were the moving force and the direct and proximate causes to the injuries suffered by Plaintiffs. ¶¶ 50, 51. Plaintiffs alleged that Defendant Officer Bunge not only completed the City of Chicago's insufficient training on use of force, but was actually assigned to the CPD training academy and was tasked with training other officers in the use of force. *Id.*, at ¶41. This fact alone is sufficient to demonstrate a nexus between the City's pattern and practice of insufficient training and unconstitutional use force and Defendant Bunge's unconstitutional conduct in this case.

On July 8, 2021, Defendant City of Chicago filed a partial motion to dismiss Plaintiffs' *Monell* claim, pursuant to Rule 12(b)(6). Dkt. 39. Rather than basing the partial motion to dismiss on the allegations actually contained within the FAC, Defendant City improperly introduced new facts and its own interpretation of those facts.

Aware of the consequent risk of having its motion to dismiss converted into one for summary judgment, Defendant City, in essence, informed the Court that it did not intend to convert its motion into one for summary judgment. Dkt 39, n. 2, 3,

4, 5. Plaintiffs similarly urge the Court to take the Defendant's motion as one to dismiss, and to deny it. The City's motion is fatally flawed based on its improper introduction of extrinsic facts. Even if this Court were to consider those facts outside the scope of the complaint, the City's argument would still fail.

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). At the motion to dismiss stage, "the court must construe all of the Plaintiffs' factual allegations as true, and must draw all reasonable inferences in the Plaintiffs' favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). To survive a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal for failure to state a claim under Rule 12(b)(6) is proper only where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.* at 212.

The complaint must include "sufficient detail to give the defendants fair notice" of the claims alleged against them. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). The complaint must also "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d

400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). The complaint must merely "give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id*. (emphasis in original). "To survive a motion to dismiss under Rule 12(b)(6), the plaintiff does not have to 'show' anything; he need only allege." *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005). *Monell* claims are subject to this same standard. *See, e.g., White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). "The Seventh Circuit has reminded courts not to apply a 'heightened pleading standard' to *Monell* claims." *Dadej v. Cook Cnty. Sherrif*, No. 19 C 1972, 2021 U.S. Dist. LEXIS 146892, at *5 (N.D. Ill. Aug. 5, 2021).

## ARGUMENT

### I. Defendant City Improperly Introduced Evidence Outside of the Complaint.

As Plaintiffs present in their Motion to Strike, Defendant City improperly introduced its own facts – facts which were not included in Plaintiffs' First Amended Complaint. When considering a motion to dismiss pursuant to Rule 12(b)(6), the court should generally consider only the plaintiff's complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002); *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005); *Forsythe v. Black Hills Corp.*, No. 04 C 5361, 2007 U.S. Dist. LEXIS 17814, at *14-15 (N.D. Ill. Mar. 12, 2007). When considering a Rule 12(b)(6) motion, the court is to construe the complaint in the light most favorable to the plaintiff, accepting as true all well-

5

pleaded facts and drawing all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008). The City's argument is based on information outside of Plaintiffs' FAC, and should therefore be denied.

Here, Plaintiffs clearly allege that CPD has a series of intertwined unconstitutional patterns and practices and that the City been deliberately indifferent to those unconstitutional practices. In the *Monell* context, deliberate indifference means that policymakers were "aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010); *City of Canton v. Harris*, 489 U.S. 378, 390 n.10, 109 S. Ct. 1197, 1205 (1989) ("It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need.").

Rather than basing its motion to dismiss on the complaint, as required by Rule 12(b)(6), Defendant City improperly raised facts not alleged in the complaint and asked that this Court accept the City's interpretation of that evidence. "Defendant's version of events…is utterly irrelevant at this point in the lawsuit." *Dolson v. Vill. of Washingtonville*, 382 F. Supp. 2d 598, 602 (S.D.N.Y. 2005). Defendant City is asking the Court to do what it cannot do in ruling on a motion to dismiss: to make inferences in its favor. These unreasonable inferences include its representation that the Consent Decree and the Civilian Office of Police Accountability (COPA) were the "result" of the DOJ and PATF reports (*Id.*, at 3), its

characterization that the Consent Decree, COPA, and the creation of a Public Safety Deputy constitute "robust reforms" (Dkt. 39, at 7) that the mere existence of COPA or the Consent Decree, in and of themselves, constitute reforms. Plaintiffs will dispute these representations by the Defendant City at the proper time later in the litigation of their *Monell* claims,[1] but the allegations in the FAC clearly meet the pleading standard at this stage of litigation. Defendant City's motion should be denied on the basis that it is seeking to have this Court consider evidence outside the FAC and make inferences in its favor, contrary to Rule 12(b)(6).

## II.     The Defendant City's Position is Unsupported by Case Law.

Even if the Court considers the extrinsic evidence improperly offered by Defendant City, the Court should nevertheless deny the motion to dismiss, as existing case law does not support Defendant City's position that purported reforms can defeat a *Monell* claim at the motion to dismiss stage. The City presented this exact argument before another judge in this district, which was properly rejected by the court. In *Treadwell v. Chi. Police Officers,* the plaintiff brought a *Monell* claim, alleging that the Chicago Police Department had a widespread pattern and practice of unconstitutional conduct that led to the violation of his rights. *Treadwell v. Chi. Police Officers David*, No. 19 C 3179, 2021 U.S. Dist. LEXIS 137647 (N.D. Ill. July 23, 2021). The Defendant City filed a motion to dismiss the *Monell* claim on a number of bases, including the argument that the plaintiff had failed to allege

---

[1] See, e.g., *Treadwell v. Chi. Police Officers David*, No. 19 C 3179, 2021 U.S. Dist. LEXIS 137647 (N.D. Ill. July 23, 2021), discussed more fully below.

7

deliberate indifference. *Treadwell v. Chi. Police Officers David Salgado, et. al*, No. 19-cv-3179, Dkt. No. 120, at 12-14. There, like here, the City argued that it was not deliberately indifferent because of "robust reforms" including the Consent Decree, along with the ordinance establishing COPA and the Public Safety Deputy within the Inspector General's office. *Id.*

In describing the City's argument, the court in *Treadwell* stated, "The City states that Plaintiff has failed to allege deliberate indifference, but the crux of their argument is that they dispute that the City was deliberately indifferent on the facts." *Treadwell v. Chi. Police Officers David*, No. 19 C 3179, 2021 U.S. Dist. LEXIS 137647, at *19-20 (N.D. Ill. July 23, 2021). The court explained that the plaintiff had alleged in detail how the City failed to hold officers accountable, "[y]et the City ignores the pleadings and instead argues about underlying facts that are not presently before the Court, including the City's 'publicly known robust reforms the City adopted before Plaintiff's arrest.'" *Treadwell v. Chi. Police Officers David*, No. 19 C 3179, 2021 U.S. Dist. LEXIS 137647, at *20 (N.D. Ill. July 23, 2021).

In *Treadwell*, like here, "the City does not deny that Plaintiff's allegations plausibly assert a claim for deliberate indifference, instead arguing that because the City adopted reforms, they could not factually be deliberately indifferent." *Id.* at *20. The court in *Treadwell* therefore ruled that "Should the City's reforms come in during discovery, the City may properly put forth those facts in a motion for summary judgment. At this stage, however, the Court denies dismissal of Plaintiff's *Monell* claim for failure to allege causation and deliberate indifference."

8

*Id.* This Court should come to the same finding here, as Plaintiffs have plausibly asserted a claim for deliberate indifference and the City's argument is improperly raised at the motion to dismiss stage.

In support of its motion, the Defendant City cites a footnote from single case, *Anderson v. Allen*, 2020 U.S. Dist. LEXIS 183695 (N.D. Ill. Oct. 5, 2020), to support its argument. However, *Anderson* is distinguishable from this case in three important ways. First, the court dismissed the *Monell* claim in *Anderson* because the plaintiff did not properly allege that the City's pattern and practice led to the constitutional violation that occurred in his case. *Id.*, at 11. Second, the court's footnote referred to data that showed an actual, demonstrative change. *Id.*, at n. 2. Third, the court's ruling was based entirely on the plaintiff's complaint, not extrinsic evidence introduced by the defendant. *Id.*

As to the first distinction, the plaintiff in *Anderson* alleged that he was injured due to CPD's policy of falsely arresting African Americans. *Id.*, at 7. In support of that claim, the plaintiff filed a complaint citing reports that the CPD had a policy of effectuating *Terry* stops in a way that disproportionately impacted African American residents. *Id.* The court highlighted the "subtle yet critical nuance" that there is a legal distinction between *Terry* stops and arrests. *Id.*, at 8. This was the legal basis for the court's dismissal of the *Monell* claim in *Anderson*. That is distinguishable from this case, where the *Monell* allegations are primarily related to excessive force and unjustified shootings of civilians, which is directly tied

9

to the underlying constitutional violation of Defendant Bunge's unjustified shooting of Plaintiffs.

The second distinction is that the footnote quoted by the Defendant City referenced data which, according to the court, gave the appearance that the City had, in fact, reformed its practices prior to the plaintiff's arrest. *Id.*, at n. 2. The plaintiff's complaint in *Anderson* relied on reports issued by a retired judge as part of settlement agreement between CPD and the American Civil Liberties Union of Illinois. *Id.*, at 7. Those reports included numerical data which indicated that the number of stops of African Americans was reduced prior to plaintiff's arrests. *Id.*, at n. 2. Here, there is no such quantifiable data or evidence before the Court demonstrating that the City has substantially changed its conduct.

The final and important distinction is that the court in *Anderson* dismissed the plaintiff's *Monell* claim based on information included in the complaint itself, consistent with Rule 12(b)(6). The quantifiable data that the court referenced in *Anderson* came from reports which were referenced in the plaintiff's complaint. Here, Defendant City's argument relies on its own extrinsic evidence, which is distinguishable from *Anderson*. Almost none of the extensive exhibits and facts in Defendant City's motion appear in the FAC.

Defendant's sole exhibit referenced in the FAC is the DOJ Report. Defendant City attached this 165-page document thoroughly documenting the City's longstanding pattern and practice of unconstitutional conduct as an exhibit to its

10

motion, asking the Court to take judicial notice. Dkt. 39-6. However, judicial notice of the document, out of the context, would be inappropriate, particularly since:

> This narrow exception [judicial notice] is aimed at cases interpreting, for example, a contract. A court's consideration of documents attached to a motion to dismiss is a "narrow exception" and is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment.

*Daugherty v. Univ. of Chicago*, 2017 U.S. Dist. LEXIS 15 at *11 (N.D. Ill. September 22, 2017).

For purposes of the motion to dismiss, with the Court taking Plaintiffs' allegations as true and making all inferences in Plaintiffs' favor, the DOJ Report overwhelmingly supports Plaintiffs' *Monell* claim and underscores that the City has a history of being deliberately indifferent to these unconstitutional practices.[2] Taking these inferences in Plaintiffs' favor, the FAC sufficiently alleges CPD's patterns and practices of unconstitutional conduct and the City's deliberate indifference to that unconstitutional conduct. See *Archie v. City of Chi.*, No. 19 CV 4838, 2020 U.S. Dist. LEXIS 176221, at *8-9 (N.D. Ill. Sep. 25, 2020) ("This is a motion to dismiss, not a trial on the papers. Plaintiffs benefit from all reasonable inferences. It is reasonable to infer from the DOJ report's findings—and from plaintiffs' allegations—that Chicago police officers have a widespread practice of using excessive force…It is reasonable to infer that plaintiffs were victims of this

---

[2] Defendant City selectively quotes from the extensive DOJ report and cherry-picks platitudes to counter the overwhelming force of the document. Dkt. 39, at 10. For example, it references the City's "positive steps to improve," but omits the very next sentence in the report describing the City's inability and lack of commitment to correcting the unconstitutional conduct detailed in the report. Dkt. 39-6, at 48.

11

practice. And it is reasonable to infer that the City is deliberately indifferent to these constitutional violations."). The same is true here.

### III. Defendant City's Cited Facts Do Not Support Its Own Argument.

Even if this Court were to consider the City's extrinsic evidence, the Court should nevertheless deny the motion to dismiss, as the City's argument fails, because that extrinsic evidence supports Plaintiffs' *Monell* claim. One of the extrinsic documents which the City relied heavily upon in its motion is the Consent Decree. *State of Illinois v. City of Chicago*, No. 17-cv-6260, ECF. No. 703-1 (N.D. Ill. Jan. 31, 2019). However, when viewed in the proper context, the Consent Decree actually undermines the City's argument and supports Plaintiffs' *Monell* claim. Defendant City selectively cited the Consent Decree itself, ignoring the hundreds of other documents in the ongoing, contested proceeding. No. 17-cv-6360, ECF Nos. 1-968. Specifically, the City avoided citing the complaint filed by the State of Illinois that details the City's extensive failures to correct its unconstitutional conduct. It also omitted any reference to the multiple reports issued by the Independent Monitor tasked with assessing whether the City is actually complying with the terms of the Consent Decree.[3]

A fatal flaw in the City's argument is that the mere existence of the decree is not, in and of itself, evidence of a remedy or reform. The City would have to *actually*

---

[3]The evidence which Defendant City omits and will be better known through the course of discovery will show that the City has not been complying with the Consent Decree. In the third semi-annual report, "the City and the CPD did not meet most of the deadlines and compliance obligations." ECF No. 942 (Apr. 8, 2021), at 10.

12

*comply* with the terms of the Consent Decree and implement substantive reforms to correct its unconstitutional conduct. The evidence will not support that conclusion, which Plaintiffs will address more thoroughly at the appropriate point in litigation. Should Defendant City wish to make this argument, the appropriate procedural posture to do so would be at the summary judgment phase, after the close of discovery. At that stage, the parties and the Court can benefit from facts related to the terms of the Consent Decree, and evidence that the City has failed to comply with those terms. The City's argument is premature, as the Consent Decree is extrinsic evidence which the City has improperly introduced at the motion to dismiss stage and should therefore not be considered.[4]

The City's reliance on COPA is equally misplaced. The City argues that the ordinance establishing COPA and appropriations to COPA constitute "robust reforms" sufficient to defeat Plaintiffs' *Monell* claim. The existence of an organization tasked with holding officers accountable for misconduct does not mean that the City does, in fact, hold officers accountable. This is demonstrated by the fact that COPA was proceeded by the Independent Police Review Authority (IPRA)

---

[4] Further, it is questionable whether the City's attempt to utilize the Consent Decree in this matter is permissible, appropriate, or fair, based on the language of the Consent Decree itself. Paragraph 707 reads, "No person or entity is or is intended to be a third-party beneficiary of this Agreement for the purposes of any civil, criminal, or administrative action…. Nothing in this Agreement will be used by any third party to create, establish, or support a claim of liability by or against the City or the CPD or any of their officials, officers, agents or employees under any federal, state or municipal law…" The City is attempting to use the agreement to defend against a claim, which appears to be against the intent of the agreement. If the City's position is that only *it* is allowed to use the Consent Decree because it is not a third-party, that would unjustly allow evidence to be used by one party in a unilateral manner that would defy the principles of the adversarial system.

13

and Office of Professional Standards (OPS), which routinely failed to hold officers accountable for misconduct. To make its argument, the City would have to introduce evidence to show that COPA has actually rectified the unconstitutional patterns and practices alleged by Plaintiffs. Again, the proper stage of litigation for such an argument would be at summary judgment, based on evidence revealed through the course of discovery. As Defendant City's references to the COPA ordinance and appropriations are extrinsic evidence that are not referenced in the FAC, they are improperly before the Court at this stage of the litigation and their argument should be defeated on that basis alone.

### IV. Plaintiffs Have Sufficiently Plead Their *Monell* Claim Regarding the City's Failure to Address Mental Health Issues of Officers.

Plaintiffs' *Monell* claim alleging the City's failure to address the mental health issues of officers was plead on "information and belief," which is sufficient to survive Defendant City's motion to dismiss. "[C]ourts liberally view *Monell* pleadings based on 'information and belief' where they concern matters 'peculiarly within the knowledge of the defendants.'" *Rodriguez v. Mohammad*, No. 19 C 5587, 2020 U.S. Dist. LEXIS 178578, at *6-7 (N.D. Ill. Sep. 29, 2020) (quoting *Brown v. Budz*, 398 F.3d. 904, 914 (7th Cir. 2005)).

Upon information and belief, the Defendant City has a policy and practice of failing to "identify, screen, monitor, and treat" officers suffering from mental health issues or implement an "early warning system" to identify officers at risk of engaging in unjustified shootings. FAC, ¶ 38(f), 38(g). Plaintiffs also alleged, upon information

14

and belief, that Defendant Officer Bunge has mental health issues that contributed to firing his weapon in an unreasonable manner, violating the constitutional rights of Plaintiffs. The City's failure to identify and address Defendant Bunge's mental health issues were a moving force of the constitutional violation. Although this claim was sufficiently plead, in the interest of judicial economy, Plaintiffs will voluntarily withdraw this portion of their *Monell* claim. Plaintiffs agree to strike, without prejudice, subparagraphs (f) and (g) of paragraph 38, and will seek leave to amend and reintroduce this portion of the claim, based on facts revealed through the course of discovery.

## CONCLUSION

For all the reasons stated above, and for reasons stated in Plaintiffs' accompanying Motion to Strike Exhibits Attached to Defendant City of Chicago's Partial Motion to Dismiss and for Other Relief, Plaintiffs request that this Court deny the Defendant City's partial motion to dismiss brought under Rule 12(b)(6) and allow Plaintiffs to proceed on their claim pursuant to *Monell*.

Dated: August 20, 2021

                                          Respectfully Submitted,

                                          /s/ Brad J. Thomson
                                          Brad J. Thomson
                                          Jan Susler
                                          PEOPLE'S LAW OFFICE
                                          1180 N. Milwaukee Ave.
                                          Chicago, IL 60642
                                          (773) 235-0070

                                          Attorneys for Plaintiffs